## CAPEWELL HORSE NAIL CO. v. WALSH, Collector.

(District Court, D. Connecticut. February 21, 1923. On Reargument June 28, 1923.)

No. 2574.

Internal revenue ⬷⬸38—Excessive income tax could be recovered, though paid without duress or protest, where claim of abatement was filed and denied.

Under Revenue Act 1918, § 252 (Comp. St. Ann. Supp. 1919, § 6336⅛uu), income taxes for 1916 and 1917, assessed by collector, in excess of that which should have been paid by law, may be recovered without proof of duress or protest, if such excess payment appears on face of return, and application for abatement was made and denied before tax was paid.

At Law. Action by the Capewell Horse Nail Company against James J. Walsh, Collector of Internal Revenue for the District of Connecticut. On demurrer to complaint. Demurrer overruled.

See, also, 1 F. (2d) 815.

THOMAS, District Judge. The plaintiff alleges in its complaint that it is a Connecticut corporation, and that under subdivision G of section 2 of an Act of Congress of October 3, 1913 (38 Stat. 172), entitled "An act to reduce tariff duties and to provide revenue for the government, and for other purposes," it prepared and filed a return of its net income for the calendar year 1916, upon the forms furnished by the Commissioner of Internal Revenue. It further alleges that it owned a subsidiary company, the operating expenses of which were paid by it, and that the subsidiary corporation had a total net loss, which the plaintiff deducted as an expense of operation, and that the Treasury Department ruled out the deduction and assessed a further tax against the plaintiff, amounting to $416.64. It is also alleged that the plaintiff then filed its claim for abatement on the official forms provided by the Secretary of the Treasury. It appears that the claim was denied, and in addition interest and a penalty were added to the claim, amounting to $49.99, and that on or about June 15, 1920, an assessment issued, after which the tax was paid to the collector on June 24, 1920. On January 14, 1921, the plaintiff filed its claim for refund with the collector of internal revenue, but

the claim was denied by the Treasury Department under a decision rendered on March 29, 1922.

A similar claim is made for the return of the excess taxes paid for the year ending December 31, 1917. The allegations of the complaint with reference to this excess tax are practically the same as those set forth with reference to the return for the year 1916. Claim is made in this suit for judgment against the collector for the excess taxes paid for 1916 and 1917.

The defendant's demurrer is based upon the failure of the plaintiff to allege in its complaint that the excess tax was paid under protest, and it is earnestly urged by the government that upon the face of the complaint these payments were voluntarily made, and that consequently, under the principle of various decisions cited in the government's brief, the plaintiff is now precluded from recovering the sums paid and as set forth in the complaint. The validity of the plaintiff's contention that the sums thus paid to the government were in fact overpayments is apparently not contested.

The rule that taxes or assessments which are voluntarily paid may not be recovered is a general one. The difficulty with it lies in its application to any concrete set of facts or circumstances. What constitutes a voluntary payment is by no means determinable by any fixed rule. What constitutes a protest is also not specifically measured. But it is not, in the present instance, necessary to determine whether, in fact, the payments thus made were voluntary payments made without protest. The identical question here presented was raised and determined adversely to the government's contention in Greenport Basin & Construction Co. v. U. S. (D. C.) 269 F. 58. That suit involved the recovery from the government of overpayments assessed against the plaintiff on its income tax return. There, also, a claim for abatement was filed, which was denied by the government. In that case, also, no formal protest accompanied the payment of the taxes after the denial of the claim for abatement, and there, also, the claim was made that the failure to make such protest at the time of tendering payment precluded the plaintiff from recovering.

Under section 252 of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛uu), it is provided "that if, upon examination of any return of income made pursuant to this act, the Act of August 5, 1909, entitled 'An act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes,' the Act of October 3, 1913, entitled 'An act to reduce tariff duties and to provide revenue for the government, and for other purposes,' the Revenue Act of 1916, as amended, or the Revenue Act of 1917, it appears that an amount of income, war profits or excess profits tax has been paid in excess of that properly due, then, notwithstanding the provisions of section 3228 of the Revised Statutes, the amount of the excess shall be credited against any income, war profits or excess profits taxes, or installment thereof, then due from the taxpayer under any other return, and any balance of such excess shall be immediately refunded to the taxpayer." Judge Garvin held that under the provisions of this act the refund is a matter of right, without proof of duress or protest, and cited U. S. v. Hvoslef, 237 U. S. 1, 35 S. Ct. 459, 59 L. Ed. 813, Ann. Cas. 1916A, 286, in support of his conclusion.

It appears that under the specific provisions of the act the plaintiff is entitled to the refund whenever it appears, upon an examination of the return, that the amount of the tax paid is in excess of that properly due. It is the claim of the plaintiff that it does appear upon the face of the return that the amount paid to the government is in excess of what was properly due, and this contention is not challenged by the government. Under such circumstances, the money is properly recoverable when paid, wholly irrespective of the existence or nonexistence of protest at the time of payment. The act of Congress does not provide for the making of any protest as a condition precedent to the right of recovery. In U. S. v. Hvoslef, supra, in which a similar statute was construed, the Supreme Court held that under such a statute the payment of monies to the government in excess of what was due could be recovered, irrespective of whether or not there was a protest filed at the time the payment was made. Mr. Justice Hughes, on page 12 (35 S. Ct. 462), said: "If it appeared that the sum sought to be recovered were not legally payable, and the claim was duly presented within the time fixed, the right to repayment was established by the express terms of the statute."

The cases cited and relied upon by the government in its brief have, therefore, no application, as those cases did not involve the construction of a specific statute.

Therefore the demurrer is overruled; and it is so ordered.

## On Reargument.

The defendant's demurrer to the plaintiff's complaint was overruled, per memorandum on file. The defendant's motion for reargument is based on the decision of the Circuit Court of Appeals for the Second Circuit in Fox v. Edwards, 287 F. 669, decided January 23, 1923. It is claimed that the Fox Case holds that, after a claim for refund is denied, no suit can lie unless the original tax was paid under protest. In the opinion Judge Rogers stated that the only question presented is: "May a taxpayer, who pays his tax *voluntarily and without protest*, based upon figures for which *he alone is responsible*, but who subsequently discovers that *he* has made a mistake, bring an action against the collector, who received his *voluntary* payment, to recover the amount of the alleged overpayment, where such overpayment was due *not to any action on the part of the collector or of any other taxing official, but solely to the taxpayer's own error?"

The underscoring (which is mine) clearly and conclusively indicates that the facts there are not the facts here. In the Fox Case it appears that the plaintiff filed an amended return showing a voluntary overpayment on previous years based on figures for which he alone was responsible and then made demand for repayment. In the case at bar an additional tax was assessed by the collector and payment of that additional tax demanded. The plaintiff then filed a claim of abatement which was denied. Then the tax was paid, a claim for refund filed which was denied and then the suit was brought. I find nothing in the Fox Case which is either applicable or controlling. In other words, the facts in this case take it out of the ruling in the Fox Case. The claim of abatement made by the plaintiff, and before the payment of the tax, is a sufficient protest to constitute the protest necessary.

When the Greenport Basin Case, 260 U. S. 512, 43 S. Ct. 183, 67 L. Ed. 370, cited in the original memorandum filed by this court was before the Supreme Court of the United States, in his summary of the facts, Mr. Justice Brandeis said: "The company insisted that the correct amount was $12,-417.36, and paid the tax as assessed, *under protest*."

This is all that was said by the Supreme Court respecting the protest, but in the court below Judge Garvin said, in Greenport Basin & Constr. Co. v. U. S. (D. C.) 269 F. at page 60: "Even if it were necessary to plead duress or protest, the petition or complaint sets forth that the defendant computed the tax under compulsion of the regulations and filed a claim for abatement of the taxes assessed before payment. This complies with every requisite of a payment under protest. Chesebrough v. U. S., 192 U. S. 253, 24 S. Ct. 262, 48 L. Ed. 432; City of Philadelphia v. Collector, 5 Wall. 720, 18 L. Ed. 614. The government urges that it is necessary to make a protest at the time of actual payment, but it seems to the court that this would be a useless requirement. The objects of the protest are to define the taxpayer's attitude and to notify the government thereof. These have been fully accomplished by the objection of the taxpayer when the computation was made and by the filing of his claim."

From the opinion of the Supreme Court it is apparent that this claim was not stressed, but, on the contrary, abandoned, leaving Judge Garvin's ruling as the law where the taxpayer files a claim for abatement, as he held that such claim for abatement is equivalent to protest. The Fox Case is illuminating and instructive, but I find nothing in it which induces me to change my former conclusion.

The demurrer is therefore overruled; and it is so ordered.